Hall, Judge.
 

 There can be no doubt but that the Plaintiff would be entitled to recover on Common Law principles. The slave Maria was given by Alexander to his son in law, M’Cree, who had notorious possession of her for six or seven years. He then gave her to the Plaintiff, his son, who was an infant, and remained with Alexander, his grandfather, after his father’s removal. Some time afterwards, Alexander sold the slave to the Defendant. It is not pretended that these gifts were not
 
 bona jide
 
 made: and, therefore, whether if the first gift had been made in secret, and the father in law had retained possession of the slave so given, and had afterwards sold her to a purchaser for a valuable consideration without notice, it would have amounted to one of those cases of fraud, which Lord Mansfield says, the Common Law would have reached without the aid of any statute ;
 
 †
 
 or whether a right was thereby created in the donee, although fraudulent, which could not be divested by him who after-wards acquired a right without fraud,
 
 ‡
 
 it is not necessary now to decide.
 

 But it is necessary to consider, 1st. Whether the statute of the 27th Eliz. ch. 4, interposes any obstacle to the
 
 *448
 
 Plaintiff’s recovery ? and if not, 2d. Whether he is pro-vented therefrom by our act of 1784, ch. 10, sec. 7
 
 ?
 

 I think the statute of the 27th Eiiz. does not extend to cage. [)CCauso the subject in controversy is a personal chattel, and that statute in express terms extends only to real property and leases for years. It declares that all covinous avid fraudulent conveyances of lands, tenements and hereditaments, shall he void as to subsequent purchasers for valuable consideration. No words are, used which comprehend personal property. If the, rule he ap,plied, “that statutes made in suppression of fraud should “ receive a liberal construction,”
 
 *
 
 the statute does not embrace the present case. The statute of 13th Eiiz. in favor of creditors, speaks not only of lands, &c. but also of goods and
 
 chattels;
 
 and if it had been intended that the statute of 27th Eiiz. should extend to goods and chattels, it would have been so expressed. It, may be further observed, that the statute of 1 Sib Eiiz. in the third section, declares that the parties to such fraudulent conveyances, as it is made to avoid, shall incur the, penalty of one year’s value, of the land, and the whole value of the goods and chattels: but the statute of the 27th Eiiz. which inflicts the same penalty as to lands, &c. is altogether silent as to personal property.
 

 But admitting that the, statute extends to goods and chattel:;, and that tlse gift to the Plaintiff was legal and not affected by our act of 1784, it would be with difficulty that I could bring my mind to adopt such a construction of it as would prevent a parent from acting in obedience to one of the most sacred duties imposed upon him by the laws of nature, tiiat is, making suitable provision for his children. When a child marries, and separates from his or her parent, the first thing that occurs to the mind of .the parent is, what part of his property, in justice to himself and perhaps to other childreu, ought he to give by way of advancement. Perhaps, as in the present case, he
 
 *449
 
 can spare a negro girl to assist his daughter: when he has done this, he thinks he lias only done his duty, and the world thinks so too. Keeping out of view adjudications on the subject, let us see whether the Parliament of England thought otherwise when they passed the statute of the 2fth Eliz. In the preamble, as well as in the body of the statute, fraudulent conveyances arc complained of, and declared void in favor of
 
 purchasers for money or other good consideration.
 
 In the proviso contained in the fourth section', it is declared that the statute shall not extend to purchasers
 
 upon or for good consideratian
 
 and
 
 bona fide.
 
 The result seems to be, that as the conveyances sought to be set aside were made
 
 upon a good consideration and bona file,
 
 they were not fraudulent, and therefore not within the statute. And in this sense are the same words used in the statute of the 13th Eliz. But it has been decided, that although in the preamble and body of the act, the conveyances there spoken of are set aside in favor of subsequent purchasers for money or other good consideration, that the words “ good consideration” mean
 
 valuable consi
 
 deration.The necessity of the case required this construction ; because, if it had been held that conveyances should be set aside in favor of subsequent purchasers for a good consideration, this dilemma must have been encountered, that conveyances for a good consideration and
 
 bona fide,
 
 spoken of in the proviso, must be set aside in favor of subsequent purchasers for a good consideration,
 
 *
 
 which would be absurd. It was therefore unavoidable that the words “ pr other good consideration,” in the body of the act, should be construed to mean
 
 valuable consideration.
 

 But it has also been decided, that as the words “ good consideration,” in the body of the act, mean
 
 valuable consideration,
 
 the same words in the proviso in the fourth section mean the same tiling. Surely they ought, if there be the same necessity for it. TVe have seen, in the case first put, that there is a necessity for .it. In the ease last put,
 
 *450
 
 that necessity is not so obvious; and, if not, why shall we not be governed by the plain import of the words ? Ey doing so, the child would retain what justice required the fatb.er to give it, and what he had given
 
 bona fide;
 
 and not be dispossessed whenever the whim and caprice of the parent might cause him to sell it to a purchaser for valuable consideration, whether he had notice or not of the gift to the child. But, says Newland, in his Essay on Contracts,
 
 *
 
 after reciting the arguments on both sides of the question, “.Although these arguments may shew that a “ different construction, with respect to voluntary convey- “ anc.es founded on a meritorious consideration, ought at “ first to have been put on this statute, it is now too late
 
 “
 
 to dispute, this point; it having been settled by several “ solemn decisions, that such conveyances, notwithstand-
 
 “
 
 ing the merit of their consideration, are, with respect-
 
 “
 
 to purchasers for valuable consideration, fraudulent and “ void.”
 

 Be this as it may, the Law was understood differently in 1777,
 
 †
 
 shortly after we separated from the mother country. And if the Law, as then declared by Lord Mansfield, meets with our approbation, it would be wrong to sacrifice our opinions to decisions which may have taken place since; more particularly, as I think, the construction then put upon the statute is more suitable to the nature of personal property in this State than a contrary one.
 

 I am aware that some decisions have taken place in this State, which indicate-that those who made them thought differently. But it may be observed, that the question we are now considering was not made. In the case of Ingles v. Donaldson,
 
 ‡
 
 which was an action brought for a slave, it is to be regretted that the question was not made; as we could have had the opinion of Judge Haywood on it. No one holds his judicial opinions in higher estimation than I do. But it will be readily seen in that case, that the Court took it for granted that the statute applied to
 
 *451
 
 ihe case, and its mind was only occupied in the proper application of the principles of the statute. The cases referred to in Ingles v. Donaldson prove this.
 
 *
 
 They were cases of real property, and prove nothing against what I now contend for.
 

 But if this statute be not in the way of a recovery, we are, secondly, to inquire whether the act of 1784 operates to prevent it.
 

 I am satisfied, for the reasons given in Sherman v. Russell,
 
 †
 
 that the act of 1784 requires that all gifts, as well as sales of slaves, shall be in writings otherwise, as there expressed, it would follow that parol gifts, although the donee did not remain in possession after the gift, would be good, and a parol sale for a valuable consideration, and accompanied with possession, would be void: a difference between gifts and sales which I think the Legislature never intended. And were we now, for the first time, to fix a construction on the act, I would say, that all parol gifts and sales should be void as between the parties thereto: that no person should be divested of his property in slaves by parol evidencfethat a title to slaves should not be conveyed to any person
 
 by parol;
 
 and that all such titles should be, as the act emphatically expresses it, void. But tills question has been put to rest by the case of Moses Knight and wife v. Theophilus Thomas,
 
 ‡
 
 amongst others. In that case it was said, that it had been decided by the Court that a parol conveyance of negroes was good as between the parties, but was void as to creditors j as well creditors after the conveyance as those who were such at the time ,• and with those decisions the Court in that case agreed. And in an anonymous case reported in 2 Hay. 86-7, it was held by the Court, that as the slave was delivered and the possession kept by the donee’s guardian, no deed of gift was necessary, because creditors and purchasers were not concerned. There was certainly another reason, and that created by the act, and that was,
 
 *452
 
 that a person should not be compelled to pact with his slaves, except a written conveyance for them be produced against him; for, in this respect, he was shielded as by the statute of frauds and perjuries.
 

 The. act declares that “ Whereas
 
 many parsons
 
 have
 
 i(
 
 been injured by secret deeds of gift to children and “ others, and for want of formal bills of sale for slaves, “ and a law for perpetuating such gifts and sales, for “ remedy whereof, &c. Be it enacted, that all sales of “ slaves shall be in writing,” &c. The remedy was for creditors and purchasers, for none others could be injured 3 as t.o them, all gifts and sales of slaves not in writing were void: more particularly as to purchasers3 for laws had been enacted before that time for the benefit of creditors. If tbe law then required that all conveyances of slaves should, as to them, be in writing, it followed that sales and gifts not in writing should be void, and the original owners, as to creditors and purchasers, should still be considered as the legal owners, so that they could convey the property in slaves to subsequent purchasers by deed, whether such purchasers had notice of a former gift or sale without deed or not: for, if they had notice, they thereby knew that such sale or gift, as to them, was void. It would not do to say that the title of such donee or ven-dee depended upon the fact, whether the subsequent purchaser had notice or not. The act of 1784 declares such gifts and sales to be void, but says nothing about notice. If the act under such circumstances declares the Defendant’s title to be good, we have no right to say that it shall
 
 not
 
 be good, because another circumstance does not appear 3 namely, that he purchased without notice. This is not like the case, where a person has a title made to him, knowing at the same time of another person’s equitable title to the same property. In such case
 
 the
 
 legal title would prevail at Law, but the person obtaining the legal title would, in Equity, be considered a trustee for the equitable claimant. So in this case, if the Defendant
 
 *453
 
 Were to apply to a Court of Equity for a favor, stating that he had notice of the Plaintiff's claim when he purchased, perhaps he would not, on that account, meet with redress. Eut here we can only notice legal rights. In the case of Latham v. Outen,
 
 *
 
 it was not only decided that upon a gift made by a parent to a child, a deed of gift shall be executed and proved and registered, but that a subsequent purchaser, as Latham was, should be entitled to the property in case there, was no deed. No question was then made whether Latham bad notice of the gift to the daughter or not 5 and I take it for granted, that the Court considered that circumstance immaterial, or notice would have been taken of it as weighing something for one party or the other. Upon”' full consideration of the case, I think the rule for a new trial should be discharged.
 

 Henderson, Judge, concurred in opinion with Judge Hall.
 

 Tatxor, Chief-Justice,
 

 contra. I do not intend to inquire whether the act of 1784 was correctly construed at first, because whatever' my individual opinion might be, a series of decisions to the same effect, long known to the public, acquiesced in by the Legislature, and sanctioned by the Court of
 
 dernier resort,
 
 must be considered as estaj-Wishing the Law. But it cannot be denied, that those decisions have been the result of an equitable construction of the act, placing within its action parol gifts, because they were within the mischiefs designed to be suppressedj and taking out of its words, and giving validity to gifts between the parties, where there were no creditors or purchasers, because it was for the protection of their rights, and for that object alone, that the act was made.
 

 To my mind it seems fair and conclusive reasoning, that the spirit of this interpretation shall be pursued through its consequences, and that every parol gift, which
 
 *454
 
 jg assailed on the. ground that it is forbidden by the Equity of the act of 1784, shall be defensible under the same act,
 
 not only
 
 where there are no creditors or purchasers, but ]j j,:ewjsej veíici'0 there are none whose rights can be affected by the construction. It may be supposed, that if the Legislature liad explained themselves fully upon the subject they would have said,
 
 “
 
 So far as these parol
 
 “
 
 gifts have a tendency to injure other persons, to wit: “ creditors or purchasers, we mean to put an end to
 
 iS
 
 them. The injury may be effected by fraud, or by se-
 
 (<
 
 crecy, one of its badges',- and the presence of either " shall render the gift a nullity against those persons.
 
 iS
 
 Whatever may be the character of the gift, however, it “ shall prevail against the donor, and all volunteer claim- “ ants under him j to the end, that, if it he fair, the donor “ shall not be enabled to practise a fraud upon the donee.
 
 “
 
 by resuming the gift, and if it be fraudulent, that the
 
 “
 
 donor may be punished for having practised it.” So far as any number of cases lias settled the construction of the act, they have been guided by the spirit of this reasoning, to the utmost extent of which I should be willing to go in any future cases $ giving effect to the probable intent of the Legislature, by putting down parol gifts, when made to the injury of others, but-sustaining them, when that consequence cannot possibly be produced.
 

 I will now briefly examine the character of this transaction as it appears upon the case stated: Upon the marriage of his daughter with William M’Cvee, Alexander gave him, by parol, the slave sued for: the gift was accompanied with a delivery, and followed by seven years possession in the son in law. The. obvious motive of the gift was, the duty of providing for a child on her establishment in life; the consideration of it was marriage, which,' says Lord Coke, is more esteemed in the Law than any other,
 
 “
 
 in respect of alliance and posterity.” The marriage consideration has been, from early times, considered sufficient to raise an use, on account of the benefit derived.
 
 *455
 
 to the father by the advancement of his child, and his being1 relieved
 
 from the charge of
 
 maintenance;
 
 *
 
 and it is such a consideration as makes a conveyance good against purchasers under the statute of 27th Elizabeth. There was not the slightest ground to impugn the fairness of the transaction between Alexander and his son in law, unless it could be imagined that lie intended, when he made the gift, to deceive some future purchaser. I should be unwilling, without a necessity enforced by the plain meaning of the words of the act, to annul a transaction charac-terised by so much fairness, and to enable a third person to gain prosperity at the expense of an innocent and meritorious acceptor of a parent’s bounty.
 

 Nor does the act, in my opinion, require a construction favorable to a purchaser
 
 with
 
 notice, where the gift between the parties was fair in itself. There is a solid reason why notice to a subsequent purchaser should make no difference, where the first transaction is fraudulent: for then, when he has notice, he knows also that it is void $ and to prefer the purchaser’s title in such case, is to discountenance and suppress fraud. There- is an obvious difference between a gift really meant by the parties to deceive some third person, and one which is fair and upright in itself, but which the Law, in pursuit of a certain policy, pronounces void against a subsequent purchaser. In the latter case, tiie inquiry whether the purchaser had notice forms an indispensiblc ingredient in the justice of the
 
 case;
 
 and when the notice is fixed
 
 upon
 
 him,
 
 it
 
 stamps his claim with the odium of attempting to divest the title of a prior owner, whose acquisition was not only fair, but, as in this case, singularly meritorious. Hence the regret expressed by the English Judges, that the constructions upon the statute of 27th Elizabeth should have rendered voluntary conveyances void against subsequent purchasers with notice. Admitting the voluntary conveyances to be fair also, this regret is perfectly
 
 natural;
 
 but would bo alto-
 
 *456
 
 gethcr misplaced upon the supposition that they were fraudulent in fact, in truth, it is only by a process of subtle and artificia! reasoning’ that voluntary conveyances, made
 
 bona fide,
 
 are brought within the operations of that statute: such as making a subsequent sale a proof of an original intention to deceive. From persons aware of this,it is not surprising to meet with the following observations : In
 
 Evelyn v.
 
 Templar,
 
 *
 
 Lord Thurlow said, that although it would have been as well, at first, if the voluntary conveyance had not been so little thought of, yet the rule was such, and so many estates stand upon it, that it cannot be shaken.” In Doe v. Martyn,
 
 †
 
 Mansfield, Chief-Justice, “ regretted that it had ever been ci decided that even notice of the prior settlement would not defeat a subsequent purchase.”
 
 In
 
 Doe v. Manning,
 
 ‡
 
 Lord Ellenborough says,
 
 “
 
 it would have been bet-
 
 ci
 
 ter if the statute liad avoided conveyances only against
 
 Si
 
 purchasers for valuable consideration,
 
 wiihoiii notice of the prior
 
 conveyance.” These remarks, and many others scattered through the books,
 
 §
 
 render it probable that a wrong construction has been put upon the 27th Elizabeth; and that if it were now to be construed for the first time, purchasers with notice would not be protected by it. The English Judges are fettered by a long chain of precedents. We are not só; but at liberty to adopt that construction of the act of 1784, upon this point at least, which is more consonant with the views of the Legislature.
 

 In a gift fairly made, which this undoubtedly was, I am unable to distinguish between the donor and voluntary claimants under ¡lira, and a purchaser with notice, except to the disadvantage of the latter. Against the donor, the donee is protected in the cnjpytnent of the property, because gifts between them were not the mischiefs intended to be suppressed. Shall a person
 
 ee
 
 fully apprised of the
 
 *457
 

 “
 
 (Ionov’s claim9'" be in a better situation than the donor, and bottom his title upon an act, the preamble of which speaks only of the injury done by
 
 secret
 
 deeds of gift? To him, most clearly, the gift was no secret: he paid Ills money with his eyes open, and with a mind fully conscious that he was buying property which, according to every principle of honesty and rectitude, belonged to another person. In this view of the case, I am unable to bring my mind to a construction of the act of 1784, which shall prefer the title of the purchaser with notice to that of the donee. For I believe the effect of such a construction will he to suppress fraud in one shape, and cherish it in a different and more odious one.
 

 On the remaining question, whether notice be a fit subject for consideration in a Court of Law, I have no doubt. If the just construction of the statute will not sustain the title of a purchaser with notice, he is no more entitled to the support of a Court of Law than to that of a Court of Equity; for the true meaning of a statute is equally' within the aognizance of both Courts. In all cases of fraud too, they have concurrent jurisdiction. The
 
 mala^ fules
 
 here consists in the purchaser’s assisting the donor to defraud the donee $ and the fact being’ established by means of the notice, neither Court ought to sustain the title. If the act is silent as to the notice', so likewise are the 27th Elizabeth, and what are called the registry acts: yet the cases cited shew that the question has been considered in both i to which may be added Cro. Jac. 158, where the want of notice is a fact stated in the case, on which the Law was pronounced. And as to considering notice at Law, many cases shew that it may be done.
 
 *
 
 On this head of notice the case presents a question which has never been decided in this Court, nor has the Law been settled by any current of decisions on the circuit. The case of a purchaser at a sheriff’s sale is not applicable; for lie is armed with the rights of, and stands on the same
 
 *458
 
 eminence with, a creditor. My opinion upon the whole case is in favor of the Plaintiff, and for the reasons I have given: but, as both my brothers think differently, there must be judgment for the Defendant.
 

 ‡
 

 3 Co. 83. Cro. Eliz, 445.
 

 †
 

 Cowp. 434.
 

 *
 

 3 Co; 82. a.
 

 *
 

 3
 
 Co.
 
 83.
 

 *
 

 Newl. 408.
 

 †
 

 Cowp. 710.
 

 ‡
 

 2 Hayw. 57.
 

 *
 

 Butler Ni, Pri. 260. 5 Co. 60,
 

 †
 

 1
 
 L.
 
 Rep, 467.
 

 ‡
 

 1 Hay. 289.
 

 *
 

 2 Hay. 66.
 

 *
 

 Plow'd, 58.
 

 *
 

 2 Bro. 149.
 

 †
 

 1 N. R. 335.
 

 ‡
 

 9 East. 71.
 

 §
 

 Newlan on Conti. 408.
 

 *
 

 1 Burr. 474. Peake’s
 
 N.
 
 P. 190, 191.